## 74741. STROBHERT v. THE STATE.
(362 SE2d 99)

SOGNIER, Judge.

Appellant was convicted of violating the Georgia Controlled Substances Act by possessing phenyl-propanone, and he appeals.

1. Appellant contends the trial court erred by denying his motion for a directed verdict of acquittal. The basis of his argument is that he was entrapped into the offense charged, and the conduct of the government agents was so outrageous that the indictment should have been dismissed.

The evidence disclosed that Michael Wright had been a paid informant for the Federal Drug Enforcement Agency in Atlanta and had given information to DEA agents Bill Marsh and Stephen Peterson which resulted in several convictions of persons engaged in illegal drug activities. On December 6, 1985 Wright initiated a meeting between himself, Marsh, Peterson, Robert Smith and William Threatt, appellant's co-defendant, to discuss the possibility of setting up a drug lab to manufacture amphetamines. Nothing was resolved at the meeting, and shortly thereafter Marsh and Peterson learned that Wright was probably "dirty," i.e., he was acting as an informant while continuing to deal in drugs himself. Although Wright continued to contact the agents regularly, they had decided not to work with Wright; each time he would contact the agents, they would give some excuse as to why they could not meet with him. However, about 4:30 p.m., December 31, 1985, Wright came to the DEA office and told Marsh and Peterson that some individuals had set up a drug lab in Wright's apartment and were in the process of manufacturing drugs. The three men then went to the Alpharetta Police Department, which had jurisdiction over the case, and after a meeting between the agents, Wright, and several police officers, Wright consented to a search of his apartment. Wright went to his apartment and called back to the police to verify that the lab was still in operation. The agents and several police officers then went to Wright's apartment and after entering, Wright called Threatt, who came downstairs and was arrested. The agents then ran upstairs and went into a bedroom

where they arrested appellant. As the agents entered the bedroom appellant, who was sitting in a chair facing the door, started to reach for something on the floor and was told to freeze. A loaded .38 calibre revolver was seized from the floor beside appellant's chair, and the agents discovered a drug lab in operation in an adjoining bathroom; the lab was manufacturing phenyl-propanone.

Threatt, who pled guilty to the offense charged, testified as a defense witness that Wright had forced Threatt and appellant at gunpoint to come to Wright's apartment and set up the lab with chemicals and equipment Wright brought to the apartment. Threatt also testified that Wright told him and appellant that if they attempted to leave the apartment, either Wright or his friends outside would kill Threatt and appellant. Wright was arrested at the scene and a short time after being jailed, committed suicide by hanging himself in his cell, and thus, was not available to testify.

Appellant argues that this evidence shows clearly that he was entrapped by the agents, and their conduct was so outrageous it constituted a violation of his due process rights warranting dismissal of the indictment. He also argues that the State failed to rebut his prima facie showing of entrapment as required by OCGA § 16-3-25, and thus, the court erred by denying his motion for a directed verdict of acquittal. These arguments are without merit.

OCGA § 16-3-25 provides, in pertinent part: "Entrapment exists where the idea and intention of the commission of the crime originated with a government officer or employee, or with an agent of either, and he, by undue persuasion, incitement, or deceitful means, induced the accused to commit the act which the accused would not have committed except for the conduct of such officer." In order to raise the defense of entrapment a defendant must admit the commission of the crime, but present evidence that he did so because of the unlawful solicitation or inducement of a law enforcement officer. *Gregoroff v. State*, 248 Ga. 667, 669-670 (285 SE2d 537) (1982); *Lawrence v. State*, 174 Ga. App. 788, 791 (1) (331 SE2d 600) (1985).

Aside from the fact that appellant did not admit he had committed the offense and was not entitled to the defense of entrapment, there is no evidence that Marsh or Peterson solicited or induced appellant to commit the offense charged. On the contrary, they were not even aware that a drug lab existed at Wright's apartment until he came to the DEA office on December 31 and informed the agents that "some individuals" were operating a drug lab in Wright's apartment. Further, there is no evidence that the agents even knew appellant prior to the time he was arrested. Thus, they could not have induced appellant to commit the crime. Although Wright might have been considered a government agent prior to the offense here, since he had been paid as an informer on previous occasions when his information

resulted in convictions, at the time of the offense charged the agents had stopped using Wright as an informer because they believed he was "dirty." Thus, there was no evidence of entrapment.

In regard to Wright's alleged "outrageous conduct" in forcing Threatt and appellant to set up and operate the drug lab, Wright was acting as a private citizen and not as an agent of Marsh and Peterson, since they were unaware of Wright's actions. Thus, even accepting Threatt's testimony at face value, such testimony would raise a defense of coercion (OCGA § 16-3-26), and would not constitute outrageous conduct by a government agent.

For the foregoing reasons we find the evidence sufficient to meet the standard of proof required by *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560). Accordingly, it was not error to deny appellant's motion for a directed verdict of acquittal. *Humphrey v. State*, 252 Ga. 525, 527 (1) (314 SE2d 436) (1984); *Branch v. State*, 182 Ga. App. 818, 819 (1) (357 SE2d 136) (1987).

2. Appellant alleges error by the trial court in admitting evidence of other criminal acts by appellant. In this regard Stephen Starling, a DEA agent, testified, over objection, that in early February 1982, the DEA was running the Georgia Laboratory Supply, an undercover operation to advertise and sell chemicals and chemical glassware to people in the business of illegally manufacturing controlled substances. A person named Charles Calloway bought some chemicals and other equipment used to manufacture methamphetamines. He was followed by DEA agents to a motel, where Calloway met another individual and transferred the chemicals and equipment to a car that drove to appellant's home. Three days later Calloway bought a five-gallon container of a chemical used to make amphetamines. A beeper had been placed in the container and this container was also traced to appellant's home. A search warrant was then obtained and executed, resulting in the seizure of books containing formulas for making controlled substances, as well as various chemicals and chemical glassware used in making amphetamines and phenyl-propanone. Some "small-scale chemistry" was taking place in appellant's bedroom at the time of the search. As a result of the search and seizure of the books and other items, appellant was indicted for, and pled guilty to, conspiracy to manufacture and attempt to manufacture controlled substances in violation of the United States Code. Appellant contends this evidence was not admissible as evidence of a similar offense.

Before evidence of independent crimes is admissible, it must be shown that the defendant was the perpetrator of the independent crime, and there must be sufficient similarity or connection between the independent crime and the offense charged so proof of the former tends to prove the latter. *Davis v. State*, 249 Ga. 309, 311 (1) (290 SE2d 273) (1982). Once the identity of the perpetrator is shown, testi-

mony concerning the independent crime is admissible for the purpose of showing identity, motive, plan, scheme, bent of mind and course of conduct. Id. There is no question in the instant case as to a showing that appellant was the perpetrator of the independent crime, and the prior offense was sufficiently similar to meet the second requirement for admissibility. In the prior offense appellant had brought chemicals and chemical glassware into the bedroom of his home and set up a lab for the manufacture of controlled substances; the lab was in operation at the time of the search, as was the lab in the instant case. Thus, almost identical circumstances were present in both cases, and evidence of the independent crime would certainly show a bent of mind on the part of appellant to manufacture controlled substances. Therefore, the conditions of identity and sufficient similarity were met, and the evidence was admitted properly. *Davis,* supra at 312.

*Judgment affirmed. McMurray, P. J., and Beasley, J., concur.*

DECIDED OCTOBER 2, 1987 —
REHEARING DENIED OCTOBER 22, 1987 — 

*Ralph J. Hunstein,* for appellant.
*Lewis R. Slaton,* District Attorney, *Joseph J. Drolet, Richard E. Hicks, Russell J. Parker,* Assistant District Attorneys, for appellee.